## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

JOSEPH W. ALLEN,

      Plaintiff,

v.                                                    Case No. 4:22-cv-148-WS/MJF

RICKY DIXON, *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

After two "unknown transportation officers" ("UTOs") refused to assist Plaintiff Joseph W. Allen in carrying his "legal documents" onto a transport bus, Allen allegedly fell on the bus's stairs and sustained injuries. Allen alleges that he did not receive adequate medical care for those injuries because Defendant Williams—a nurse employed by Centurion—refused to refill Allen's prescriptions and renew his medical passes.

Three months later, the Florida Department of Corrections ("FDC") again transferred Allen to another facility. Defendant Officer Jordan allegedly oversaw Allen's transfer. Allen allegedly did not receive two boxes containing certain "legal documents" until several months after his transfer. Allen alleges that four "law books" and four or five "folders of legal documents" are missing.

Because Allen's fifth amended complaint fails to state a plausible claim for relief as to several causes of action, the District Court should dismiss with prejudice all of Allen's claims against Defendant Ricky Dixon and Allen's Eighth-Amendment claim of deliberate indifference to a serious medical need against Centurion. Additionally, because Jordan is not properly joined as a defendant under Federal Rule of Civil Procedure 20(a)(2), the District Court should sever and dismiss without prejudice Allen's claims against Jordan.

## I. BACKGROUND

On January 4, 2023, Allen, a prisoner proceeding *pro se*, file a fifth amended complaint. Doc. 22. Allen alleges that on November 16, 2021, two UTOs transported Allen from the Blackwater River Correctional Facility to the Apalachee Correctional Institution ("ACI"). *Id.* at 6 ¶ 1. Allen alleges that "[t]his transportation has been repeatedly done several times without incident." *Id.* According to Allen, he showed the UTOs his "current issued medical passes," which listed Allen's medical restrictions due to "past back surgery," "current back problems," and a "right[-]knee issue." *Id.* Allen's medical restrictions allegedly prohibit him from lifting, pushing, and pulling no more than twenty pounds. *Id.* at 6–7 ¶¶ 1, 4.

Allen alleges that the UTOs refused to help Allen carry "over hundreds of pounds of legal documents" onto the transport bus and prevented other inmates from helping Allen do so. Doc. 22 at 6–7 ¶¶ 1–2, 4. According to Allen, the UTOs

"ridiculed" Allen, called Allen "many abusive names," and "repeatedly told [Allen] to abandon [his] legal documents." *Id.* at 7 ¶ 3. Allen also alleges that Dixon, the Secretary of the FDC, ordered that Allen's transfer be "swift and hard." *Id.* at 9 ¶ 11. Allen, however, does not allege how he knows this.

As he was carrying a box of "legal documents" up the bus's "makeshift steps," Allen allegedly lost his balance and fell backwards off the bus. *Id.* at 6–7 ¶¶ 2, 4. Allen alleges that he could not grab the bus's railing because he was shackled. *Id.* at 7 ¶ 4. Allen alleges that after he fell, he initially refused medical treatment because he was embarrassed. Doc. 22 at 7 ¶ 5. Thirty minutes after the fall, however, Allen allegedly realized that he injured his back, head, right arm and elbow, and right leg and knee. *Id.*

Following his fall on November 16, 2021, Allen was transported that same day to ACI. *Id.* at 7, 11 ¶¶ 5, 16. At ACI, Williams examined Allen's injuries. *Id.* at 23. Williams provided Allen with a "handful[] of Ibuprofen and [a] tube of muscle rub." *Id.* Allen alleges that he was "surprised and impressed with [his] initial medical treatment." Doc. 22 at 23. But two weeks later, Allen learned that Williams "denied refilling [his] medication(s) even for [his] hemorrhoids" and refused to renew Allen's medical passes. *Id.* Allen alleges that as a result of Williams's actions, he was "in severe pain" for three months. *Id.* at 11 ¶ 16.

Additionally, Allen alleges that for "the whole year of 2022," he did not receive an MRI or a brain scan. *Id.* at 10 ¶ 13. Allen does not allege why he needs an MRI or a brain scan. Allen also alleges that Centurion and its employees failed "to order refill medications and fail[ed] to give a proper examination and diagnosis." *Id.* Allen then lists several medical examinations and medications:

> Pain medication (pills); muscle rub (cream); hemorrhoidal medication (ointment, wipes); written passes ect., testing (MRI, EKG, EEG) brain/head scans. viz, Naproxen 500 mg. says: "Take one tablet by mouth twice daily with food as needed." Your, Centurion practice is to only give, (30 pills to last 90 days). Directions of two a day as needed, is correctly directed. But 15 day I am out of pain relief on the 16th day. That leaves <u>75 days with nothing</u>.

Doc. 22 at 11 ¶ 15 (errors and emphasis in original).

On February 22, 2022, Allen alleges that he was transferred from ACI to the Wakulla Correctional Institution "due to [a] violation of reprisal/retaliation" without two boxes of his "legal documents." *Id.* at 8 ¶ 6. Allen alleges that Jordan oversaw Allen's transport. *Id.* at 10 ¶ 12. When Allen went to retrieve the two boxes before his transfer, Jordan allegedly stated, "Allen I know why you're here, and Allen your a piece of [expletive] and if it was up to me you would not get none of your legal documents." *Id.* (errors in original). When Allen received the boxes several months after his transfer, four "law books" and four or five "folders of legal documents" allegedly were missing from the boxes. *Id.* at 8 ¶ 7.

Allen asserts the following claims:

- the two UTOs and Dixon violated the Eighth Amendment because they demonstrated deliberate indifference to a substantial risk of serious harm to Allen during his November 16, 2021 transfer;

- Dixon and Jordan violated the Due Process Clauses of the Fifth and Fourteenth Amendments because they transferred Allen without his boxes of "legal documents," and because when Allen eventually received the boxes, the boxes were missing certain materials;

- the two UTOs, Dixon, and Jordan violated Allen's equal-protection rights under the Fifth and Fourteenth Amendments because they singled out Allen with "malicious intent" during his transfers; and

- Centurion and Williams violated the Eighth Amendment because they were deliberately indifferent to Allen's serious medical needs.

Doc. 22 at 6–11, 22–23. Allen is suing Dixon in his official and individual capacities, Centurion in its official capacity, and the remaining defendants in their individual capacities. *Id.* at 2–4. As relief, Allen requests damages, various forms of medical treatment, and "injunctive relief from transfer." *Id.* at 13–14.

## II. STANDARD

Because Allen is a prisoner, the court is required to review his complaint, identify cognizable claims, and dismiss the complaint, or any portion thereof, if the

complaint is frivolous, is malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)–(b); *see id.* § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings).

A court should dismiss a claim that is not supported by factual allegations, accepted as true, that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Factual allegations that merely suggest the possibility that the defendant acted unlawfully are insufficient. *See Twombly*, 550 U.S. at 555. A court also should dismiss a claim when the allegations demonstrate that recovery is barred by an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).

Courts "hold the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). But federal courts "cannot act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (citation omitted).

## III. DISCUSSION

**A.    <u>Allen's Claims Against Dixon</u>**

Allen is suing Dixon, the Secretary of the FDC, in Dixon's official and individual capacities. Doc. 22 at 2. He asserts against Dixon claims under the Fifth, Eighth, and Fourteenth Amendments. *Id.* at 6–10. As relief for these claims, Allen requests damages and "injunctive relief from transfer." *Id.* at 7–10.

### 1.    *Allen's Official-Capacity Claims for Damages Are Barred by Sovereign Immunity*

Official-capacity claims are "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). An official-capacity claim against a governmental official, therefore, generally is "treated as a suit against the underlying governmental entity." *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005) (citing *Graham*, 473 U.S. at 165–67). Thus, Allen's official-capacity claims against Dixon essentially are claims against the FDC.

The Eleventh Amendment generally bars suits for damages by an individual against a state, its agencies, and its employees, unless Congress has abrogated the state's sovereign immunity or the state has consented to suit. *Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)); *see Hans v. Louisiana*, 134 U.S. 1, 16–18 (1890); *Manders v. Lee*, 338 F.3d

1304, 1308 (11th Cir. 2003) (en banc). Congress has not abrogated the states' sovereign immunity in actions under section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67–68 (1989). Under *Ex parte Young*, however, an individual may sue state officers in their official capacities for prospective injunctive relief. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).

It is unclear whether Allen is asserting against Dixon an official-capacity claim for damages. To the extent that he is, Allen's claim is barred by the Eleventh Amendment. *See Walden v. Fla. Dep't of Corr.*, 975 F. Supp. 1330, 1331 (N.D. Fla. 1996) (noting that the FDC is "a state agency that is clearly the equivalent of the State of Florida for Eleventh Amendment purposes"). The District Court, therefore, should dismiss with prejudice any official-capacity claim for damages that Allen is asserting against Dixon.

### 2. *Allen Fails to Allege an Individual-Capacity Claim Against Dixon*

Section 1983 claims "may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citation omitted). Supervisors are liable under section 1983 only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional violation." *Id.* (quotation omitted).

### (a).    Allen's Eighth-Amendment Claim Against Dixon

Allen alleges that on November 16, 2021, the UTOs violated the Eighth Amendment by ordering Allen to carry "over hundreds of pounds of legal documents" onto the transport bus even though Allen was shackled and had notified the UTOs of his medical limitations. Doc. 22 at 6–7. Allen fails to plausibly allege, however, that Dixon personally participated in the UTOs' alleged misconduct or that there is a causal connection between Dixon and the UTOs' alleged misconduct. Allen merely alleges—without any factual support—that Dixon "was guilty of knowledge and consent." *Id.* at 7 ¶ 2.

The undersigned previously advised Allen of the standard for asserting section 1983 claims against supervisors. *See* Doc. 17 at 7–8. Despite the undersigned's instructions and five opportunities to amend his complaint, Allen again fails to allege that Dixon violated the Eighth Amendment in his individual capacity. The District Court, therefore, should dismiss Allen's individual-capacity claim against Dixon under the Eighth Amendment for deliberate indifference to a substantial risk of serious harm.

### (b).    Allen's Fifth-Amendment Claims Against Dixon

Allen also asserts a Fifth-Amendment due-process claim and equal-protection claim against Dixon based on the alleged misconduct that occurred during Allen's transfers. Doc. 22 at 8–10. Notably, the Fifth Amendment applies to the United

States, its agencies, and its employees. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States . . . from depriving any person of property without 'due process of law.'"). The Fourteenth Amendment, on the other hand, applies to the states. *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n.21 (1987) ("The Fourteenth Amendment applies to actions by a State.").

Because Dixon is an employee of the State of Florida, not the federal government, Allen cannot assert a Fifth-Amendment claim against Dixon. The District Court could construe these claims under the Fourteenth Amendment, but as discussed below, Allen also asserts these same claims under the Fourteenth Amendment. The District Court, therefore, should dismiss Allen's individual-capacity Fifth-Amendment claims against Dixon.

### (c).    Allen's Fourteenth-Amendment Due-Process Claim Against Dixon

Allen next asserts a Fourteenth-Amendment due-process claim against Dixon. This claim is based on the FDC's (1) transferal of Allen to another prison on February 22, 2022, without allowing Allen to take with him two boxes of his legal documents; and (2) the theft of materials from his boxes of legal documents. Doc. 22 at 8. Allen alleges that Dixon should be held accountable because Dixon has the "power to give instructions" and because Dixon violated the Florida Administrative Code. *Id.* at 8 ¶ 7. Allen provides no factual support for these assertions, however.

Allen utterly fails to provide any factual allegations that plausibly would suggest that Dixon personally participated in any due-process violation that resulted from Allen's transfer on February 22, 2022, or that there is a causal connection between Dixon's actions and the alleged due-process violation on that date. The District Court, therefore, should dismiss Allen's individual-capacity Fourteenth-Amendment due-process claim against Dixon.

### (d).    Allen's Fourteenth-Amendment Equal-Protection Claim Against Dixon

In his final claim against Dixon, Allen asserts that Dixon violated the Equal Protection Clause of the Fourteenth Amendment because Dixon had "constructive knowledge [of] and consent[ed]" to the UTOs' and Jordan's alleged misconduct during Allen's transfers. Doc. 22 at 9 ¶ 10. Allen essentially alleges that because Allen has been mistreated by FDC employees, Dixon must have consented to the mistreatment. *Id.* As with Allen's other individual-capacity claims against Dixon, Allen fails to include any factual allegations that plausibly suggest that Dixon personally participated in any equal-protection violation that occurred during Allen's transfers, or that there is a causal connection between Dixon's actions and any equal-protection violation during Allen's transfers. Thus, the District Court should dismiss Allen's individual-capacity Fourteenth-Amendment equal-protection claim against Dixon.

### 3. *Allen Lacks Standing to Seek "Injunctive Relief from Transfer"*

As to Dixon, the UTOs, and Jordan, Allen requests "injunctive relief from transfer." Doc. 22 at 7. Dixon is the only one of these four defendants, however, against whom Allen is asserting an official-capacity claim. *Id.* at 2–3. Thus, Dixon is the only proper defendant for Allen's claim to the extent Allen seeks injunctive relief. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.") (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)); *Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) (noting that section 1983 does not permit injunctive relief against state officials sued in their individual capacities); *Jones v. Buckner*, 963 F. Supp. 2d 1267, 1281 (N.D. Ala. 2013).

"Article III of the Constitution limits the subject-matter jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd of Reg. & Elections*, 36 F.4th 1100, 1113 (11th Cir. 2022) (quoting U.S. Const. art. III, § 2). This limitation "embodied in the doctrine of standing, 'confines the federal courts to a properly judicial role.'" *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Standing comprises three requirements: "the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)); *Schultz v. Alabama*, 42 F.4th 1298, 1319 (11th Cir. 2022). With respect to the injury-in-fact requirement, the plaintiff must allege a harm that is "'concrete' and 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (quotation marks and quotation omitted).

When a plaintiff seeks injunctive relief, *past* injury "does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)). Instead, the plaintiff must allege a "real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *J.W. by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018) (per curiam) (quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994)).

Allen requests "injunctive relief from transfer." Doc. 22 at 7–10. Allen fails to plausibly allege, however, that he faces a real and immediate threat of a future transfer for an improper purpose. Allen simply relies on *past* transfers as grounds for enjoining *future* transfers. That is insufficient. *Lyons*, 461 U.S. at 102 (quoting *O'Shea*, 414 U.S. at 495). Indeed, since Allen was allegedly transferred to the

Wakulla Correctional Institution on February 23, 2022, *almost one year ago*, the FDC apparently has not transferred Allen to another prison. *See* Doc. 1 at 14; Doc. 22 at 8 ¶ 7. Because Allen fails to plausibly allege that he faces a real and immediate threat of a future transfer for an improper purpose, the District Court should dismiss Allen's claim for "injunctive relief from transfer" for lack of standing.

*   *   *

Because Allen has failed to state plausible claims against Dixon, despite the undersigned affording Allen five opportunities to supplement and clarify his allegations, the District Court should dismiss all of Allen's claims against Dixon.

## B.    Allen Improperly Joins Jordan as a Defendant in this Action

Multiple defendants may be joined in the same action only if two requirements are met. *Vanover v. NCO Fin. Servs.*, 857 F.3d 833, 839 (11th Cir. 2017). First, a right to relief is asserted against the defendants "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Second, there is a "question of law or fact common to all defendants" in the action. Fed. R. Civ. P. 20(a)(2)(B).

To determine whether claims arise from the same transaction or occurrence, courts in the Eleventh Circuit apply the "logical relationship" test. *Smith v. Trans-*

*Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985)). "[A] logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim." *Id.* (citing *Republic Health Corp.*, 755 F.2d at 1455). In other words, when the "same operative facts serve as the basis of both claims," the claims arise from the same transaction or occurrence. *Republic Health Corp.*, 755 F.2d at 1455 (quoting *Plant v. Blazer Fin. Servs., Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979)). Claims that "do not arise from common operative facts are not logically related." *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1381 n.1 (11th Cir. 1991).

Federal Rule of Civil Procedure 21 allows a court to sever and dismiss improperly joined defendants. *See Daker v. Head*, 730 F. App'x 765, 768 (11th Cir. 2018). Federal courts enjoy broad discretion to sever claims and parties if the court determines that joinder would cause prejudice to a party or would delay resolution of the case. *United States v. O'Neil*, 709 F.2d 361, 367 (5th Cir. 1983); *see Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007); *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002).

The undersigned previously advised Allen that his claims against the two UTOs, Centurion, and Williams are not logically related to his claims against Jordan and that Allen should name as defendants only those individuals that can be joined

properly under Rule 20. *See* Doc. 17 at 8–9; Doc. 19 at 4–6; Doc. 21 at 3–4. Despite the undersigned's repeated instructions, Allen again includes in his fifth amended complaint claims against the UTOs, Centurion, Williams, and Jordan.

Allen's claims against the UTOs arise from Allen's November 16, 2021 transfer to ACI. Doc. 22 at 6–7, 9–10. Allen's claims against Centurion and Williams arise, in part, from the failure to treat injuries Allen allegedly sustained during his transport on November 16, 2021. *Id.* at 10–11. Allen's claims against Jordan, on the other hand, arise from Allen's February 22, 2022 transfer to the Wakulla Correctional Institution and involve Jordan's alleged failure to ensure that Allen was transported with all of the boxes containing Allen's "legal documents" and that the boxes were intact once Allen received them. *Id.* at 8–10.

Allen's claims against the UTOs, Centurion, and Williams arise from a different set of operative facts than Allen's claims against Jordan. Additionally, approximately three months separate the events that gave rise to Allen's claims against the UTOs, Centurion, and Williams and the events that gave rise to Allen's claims against Jordan. Permitting Allen to prosecute these myriad claims in a single civil action would cause prejudice to the parties, would complicate any trial, and would delay resolution of this case. It also would allow Allen to avoid paying the filing fee for an unrelated cause of action. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (noting that "[u]nrelated claims against different defendants belong in

different suits" to prevent unruly complaints and "to ensure that prisoners pay the required filing fees").

For these reasons, the District Court should sever and dismiss without prejudice Allen's claims against Jordan.[1]

## C.    Allen's Eighth-Amendment Claim Against Centurion

The Eighth Amendment requires governments "to provide minimally adequate medical care to those whom they are punishing by incarceration." *Hoffer v. Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991)). A "prison official's 'deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quotation marks and citations omitted)).

To state an Eighth-Amendment claim of deliberate indifference to a serious medical need, a plaintiff must plausibly allege:

1.  the plaintiff had a serious medical need;

---

[1] Courts must consider whether a dismissal without prejudice would effectively be with prejudice because of the statute of limitations. *Stephenson v. Warden*, 554 F. App'x 835, 838 (11th Cir. 2014). Section 1983 claims brought in Florida have a four-year statute of limitations. *City of Hialeah v. Rojas*, 311 F.3d 1096, 1103 n.2 (11th Cir. 2002). The earliest alleged misconduct on which Allen bases his claims against Jordan occurred in February 2022, so the statute of limitations likely would not bar Allen from asserting those claims in a separate action in the near future.

2. the defendant was deliberately indifferent to the plaintiff's serious medical need;

3. the plaintiff suffered an injury; and

4. the defendant's deliberate indifference caused the plaintiff's injury.

*Roy v. Ivy*, 53 F.4th 1338, 1346–47 (11th Cir. 2022) (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)); *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016). This claim includes an objective component—"that the deprivation was serious enough to constitute cruel and unusual punishment"—and a subjective component—deliberate indifference. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000).

Although Centurion is not a governmental entity, "when a private entity . . . contracts . . . to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011); *Roy*, 53 F.4th at 1347; *Ireland v. Prummell*, 53 F.4th 1274, 1289 (11th Cir. 2022).

It is well established, however, that municipalities may not be held liable in a section 1983 action under a *respondeat superior* theory. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Ireland*, 53 F.4th at 1289. Instead, "it is when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983." *Monell*, 436 U.S. at 694.

"A plaintiff can establish municipal liability under *Monell* in three ways: (1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional right." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022) (citation omitted). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (quoting *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997)). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Cooper*, 403 F.3d at 1221. "[R]andom acts or isolated incidents are insufficient to establish a custom or policy." *Ireland*, 53 F.4th at 1290 (quotation and citation omitted).

In his fifth amended complaint, Allen alleges, "[N]o MRI, no brain scan and continually and repeatedly (Centurion) and it's employees keep on failing to order refill medication and failing to give a proper examination and diagnosis." Doc. 22 at

10 ¶ 13 (errors in original). Allen also lists various medical treatment and procedures: "eg. pain medication (pills); muscle rub (cream); hemorroidal medication (ointment, wipes); written passe's ect., testing (MRI, EKG, EEG) brain/head scans." *Id.* at 11 ¶ 15 (errors in original). Allen further alleges that he is prescribed 30 Naproxen for 90 days with directions to "take one tablet by mouth twice daily with food as needed." *Id.* Allen alleges that although the prescription is correct, he was denied pain medication after his fifteenth day. *Id.*

Despite these allegations, Allen fails to allege that he suffered any Eighth-Amendment injury because of a policy or custom attributable to Centurion. Said differently, Allen's allegations are insufficient to plausibly suggest that any Eighth-Amendment injury he allegedly suffered resulted from an official policy of Centurion, a decision made by a Centurion official with final policymaking authority, or Centurion's "practice that is so settled and permanent that it takes on the force of law." *Cooper*, 403 F.3d at 1221.

The undersigned previously advised Allen of the standard for asserting section 1983 claims against municipalities. *See* Doc. 17 at 6–7; Doc. 21 at 14–16. Despite that advice and having five opportunities to supplement and clarify his allegations, Allen again fails to assert a plausible Eighth-Amendment claim against Centurion. *See* Docs. 6, 16, 18, 20, 22. Thus, the District Court should dismiss with prejudice Allen's Eighth-Amendment claim against Centurion.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1.      **DISMISS** with prejudice, under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), the following claims:

        a.      all of Allen's claims against Defendant Ricky Dixon; and

        b.      Allen's Eighth-Amendment claim against Defendant Centurion.

2.      **DISMISS** Allen's claim for "injunctive relief from transfer" for lack of standing.

3.      **SEVER** and **DISMISS** without prejudice Allen's claims against Defendant Officer Jordan.

4.      Refer this action back to the undersigned to address Allen's remaining claims: (1) an Eighth-Amendment individual-capacity claim against the UTOs, (2) individual-capacity equal-protection claims under the Fifth and Fourteenth Amendments against the UTOs, and (3) an Eighth-Amendment individual-capacity claim against Williams.

At Pensacola, Florida, this <u>31st</u> day of January, 2023.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**