## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

JOSEPH W. ALLEN,

      Plaintiff,

v.                                            Case No.  4:22-cv-148-RH-MJF

ROLAND WILKERSON and
TYRONE ASKEW,

      Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Joseph W. Allen alleges that the two Defendants were deliberately indifferent to Allen's serious medical need when they required him to carry heavy bags onto a bus—while shackled—even though Allen told Defendants he had a medical pass that ordered him not to lift objects heavier than 20 pounds. Allen fell backwards from the bus and suffered multiple injuries. The parties filed cross-motions for summary judgment. Docs. 105, 106, 111, 112. The District Court should deny the motions for summary judgment because genuine issues of material fact remain outstanding.

# I. BACKGROUND

On January 3, 2023, Allen filed a fifth amended complaint pursuant to 42 U.S.C. § 1983. Doc. 22. Allen alleged that Defendants—who are FDC correctional officers—violated the Eighth Amendment by showing deliberate indifference to Allen's serious medical need. Doc. 22 at 6. Allen also claimed that the same conduct violated his right to equal protection. Doc. 22 at 39. On March 10, 2024, the District Court dismissed Allen's equal-protection claims. Doc. 85. Allen's only remaining claim is deliberate indifference to a serious medical need.

# II. MATERIAL FACTS

The following facts are drawn from Allen's verified fifth amended complaint and Allen's deposition. Doc. 22; Doc. 106-1. Defendants stipulate to these facts for the limited purpose of resolving the cross-motions for summary judgment. Doc. 106 at 2 n.2; *see also* Doc. 111 at 1 n.1.

On November 16, 2021, Allen was awaiting transfer from Blackwater River Correctional Facility to Apalachee Correctional Institution. Doc. 22 at 22. Allen's personal possessions included six bags

of legal material, estimated to weigh 50 pounds each, which needed to be loaded onto a bus for transfer. Doc. 106-1, Allen Dep. 12:2–4, 13:5–6, 21:2.

When it came time to load the property onto the bus, Allen informed Defendants of his "Florida Department of Corrections Health Slip/Pass" and showed it to Defendants. Doc. 106-1, Allen Dep. 11:12–19, 17:17–18:7; Doc. 22 at 6–7 ¶¶ 1, 3. The health pass restricted Allen from pushing, pulling, or lifting over 20 pounds. Doc. 106-1, Allen Dep. 11:15–16; Doc. 22 at 26 (copy of pass). Defendants told Allen they "didn't care" about the health pass and ordered Allen to load his property onto the bus or abandon it. Doc. 106-1, Allen Dep. 11:19–23, 12:20–24, 17:17–18:7; Doc. 22 at 6–7 ¶¶ 1, 3. An inmate who worked in the property room volunteered to help Allen load his property. Doc. 22 at 6–7 ¶¶ 1, 3; Doc. 106-1, Allen Dep. 12:15–16. Defendants refused. Doc. 106-1, Allen Dep. 12:17; Doc. 22 at 6 ¶ 1.

Allen then asked if he could load his property prior to having shackles placed on his ankles. Doc. 106-1, Allen Dep. 11:24–12:9. Defendants refused Allen's request and encouraged him to hurry or abandon his bags. Doc. 22 at 7 ¶ 3, 4; Doc. 106-1.

Allen responded: "I'm not leaving my law work, sir. . . . I need my law work. . . . I don't have a problem carrying it, but I cannot pick it up like that with the shackles." Doc. 106-1, Allen Dep. 12:10–13. Defendants told Allen they would allow other inmates to place the property bags on Allen's shoulders. Doc. 106-1, Allen Dep. 12:13–14.

Inmates loaded four of the property bags on Allen's shoulders.[1] Doc. 106-1, Allen Dep. 13:1–11. While Allen was carrying the bags up the bus steps in leg shackles, Allen fell backwards and hit the ground hard. Doc. 106-1, Allen Dep. 13:12–22; Doc. 22 at 7 ¶ 4. Another officer radioed for medical assistance. Doc. 22 at 7 ¶ 5. Before the nurse arrived, Allen got up and, although in pain, asked inmates to load the remaining bags onto his shoulders. Doc. 106-1, Allen Dep. 14:5–25. Allen then loaded the remaining bags onto the bus. Doc. 106-1, Allen Dep. 14:23–25.

When the nurse arrived, Allen exited the bus, met the nurse, but refused medical treatment purportedly because Wilkerson and the nurse laughed at Allen, and Allen felt embarrassed and humiliated. Doc. 106-1, Allen Dep. 15:1–16:6; Doc. 22 at 7 ¶ 5.

---

[1] The evidence does not indicate who decided to put multiple bags on Allen's shoulders. Regardless, the weight of even one bag exceeded the quantity permitted by Allen's medical restriction.

During transport, Allen developed pain and realized he had "reinjured [his] back, head, right arm/elbow and right leg/knee." Doc. 22 at 7 ¶ 5; Doc. 106-1, Allen Dep. 16:8. Upon arrival at the next institution, Allen informed Wilkerson that he was in pain, and Wilkerson told the director of nursing about Allen's fall. Doc. 106-1, Allen Dep. 16:22–17:1 and 17:10–15, 19:4–17. The medical department provided pain medication. Doc. 106-1, Allen Dep. 17:4–7.

## III. DISCUSSION

### A. <u>Summary Judgment Standard</u>

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it could affect the outcome of the case. *Id.* When addressing a summary-judgment motion, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).

**B.**   <u>**Claim of Deliberate Indifference to a Serious Medical Need**</u>

To demonstrate the existence of a genuine issue of material fact regarding an Eighth-Amendment claim of deliberate indifference to a serious medical need, a plaintiff must produce sufficient evidence regarding the following elements:

> (1) the plaintiff had a serious medical need;
>
> (2) the defendant acted with deliberate indifference to the plaintiff's medical need, *i.e.*, the defendant was actually, subjectively aware that his own acts or omissions caused a substantial risk of serious harm to the plaintiff, he disregarded that risk, and the defendant acted with subjective recklessness as used in the criminal law; and
>
> (3) the defendant's acts or omissions caused plaintiff's injury.

*Donald v. Norris*, 131 F.4th 1255, 1264–65 (11th Cir. 2025); *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024); *Wade v. McDade*, 106 F.4th 1251, 1255, 1258 (11th Cir. 2024) (en banc).

For purposes of the pending motions, Defendants do not dispute that Plaintiff had a serious medical need. *See* Doc. 106 at 7–14.

1.  ***There Are Genuine Issues of Material Fact Regarding the Deliberate-Indifference Element***

Defendants assert that Allen failed to create a genuine issue of material fact regarding the deliberate-indifference element. Specifically, they contend that the evidence does not create a reasonable inference that they knew their actions posed a substantial risk of serious harm to Allen. Doc. 106 at 10–12.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . , and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan,* 511 U.S. 825, 842 (1994). Here, evidence that Defendants knew Allen had a serious medical need that precluded him from lifting more than 20 pounds includes the following:

- Allen informed Defendants of his Florida Department of Corrections health pass and showed them the pass. Doc. 22 at 6–7 ¶¶ 1, 3; Doc. 106-1, Allen Dep. 11:12–19, 17:17–18:7.

- Allen's health pass states: "**Restrictions:** no push/pull/lift over 20 pounds." Doc. 22 at 26.

- A property orderly who overheard Allen tell Defendants about the health pass requested to help load Allen's property. Doc. 22 at 6 ¶ 1; Doc. 106-1, Allen Dep. 12:15–16.

- Defendants acknowledged the contents of Allen's health pass insofar as they allowed inmates to load Allen's property onto Allen's shoulders, but still required Allen to haul his property up the bus steps. Doc. 106-1, Allen Dep. 12:13–14, 13:1–11.

- While Allen was loading his bags—in the presence of Defendants— Allen "struggled" getting his property "up to the bus," and was "rushing, sweating and straining and breathing hard" to the point where other inmates offered to help, but Defendants refused. Doc. 106-1, Allen Dep. 13:2–4; Doc. 22 at 7 ¶ 4.

From this and other evidence, and reasonable inferences drawn from this evidence, a jury could find that Defendants acted with deliberate indifference. Specifically, a jury could find that the Defendants actually and subjectively were aware of Allen's serious medical need, that their acts or omissions caused a substantial risk of serious harm to Allen, and Defendants disregarded this risk.

### 2. *There is Evidence that Defendants' Deliberate Indifference Caused Physical Injuries*

Defendants next argue that their acts or omissions did not cause the injuries Allen allegedly suffered to his back, head, arm, and knee, and Allen's partial blindness in one eye. Doc. 106 at 13–15. Defendants rely

on a declaration from nurse consultant Kellie Caswell, who reviewed

Allen's medical records and reached the following conclusions:

> 33.  There is no evidence that the alleged incident caused any
> reaggravated injury to Mr. Allen's previous back injury or
> caused any new back injury. It has been established that he
> has degenerative changes and arthritis in his back which can
> cause chronic pain.
>
> 34.  There is no evidence that the alleged incident of a fall on
> November 16, 2021, contributed to Mr. Allen's detached retina
> on October 4, 2023.

Doc. 106-2, Caswell Decl. ¶¶ 33–34. Based on Caswell's conclusions,

Defendants argue that "Plaintiff cannot demonstrate a causal connection

between Defendants' deliberate indifference to his medical need and his

injuries." Doc. 106 at 14–15.

Allen, however, presented evidence that his fall caused physical

injuries, including Allen's deposition, his verified fifth amended

complaint, and FDC medical records. This evidence indicates the

following:

- Allen "pulled" his back while loading his bags onto the bus, which
  aggravated a preexisting herniated disc. Doc. 106-1, Allen Dep.
  28:2–16.

- Allen developed dizziness, a headache, and pain in his back, knee,
  and arm/elbow about 15-30 minutes after the fall. Doc. 22 at 7 ¶ 5;
  Doc. 106-1, Allen Dep. 16:7–9, 16:20–22, 19:16–17 and 23:18–23.

- After he fell from the bus, Allen visited the medical clinic and reported—and was assessed/treated for—blunt force trauma to the back of the head and pain in his back/neck left arm/wrist. Doc. 106-2 at 39–40.

- Medical personnel treated Allen's reported pain with ibuprofen and muscle rub. Doc. 106-1, Allen Dep. 17:2–7.

- On December 2, 2021, January 26, 2022, March 17, 2022, and other dates, Allen sought medical treatment for pain he attributes to injuries sustained when he fell from the bus. Doc. 106-2 at 432–35 (MR425–28); *Id*. at 412–13 (MR405–06); *Id*. at 346 (MR339).

- To alleviate Allen's reported pain, medical personnel prescribed ibuprofen, acetaminophen, naproxen, and muscle rub. Doc. 106-2 at 432–35 (MR425–28); *Id*. at 412–13 (MR405–06); *Id*. at 346 (MR339).

This evidence creates a genuine issue for trial as to whether Defendants' acts or omissions caused at least some of Allen's alleged injuries.

### 3. *Defendants' Reasonableness <u>After</u> Allen Fell Does Not Preclude Liability for Deliberate Indifference <u>Before</u> Allen Fell*

Defendants next assert a frivolous argument: they are not liable because they responded reasonably to Allen's medical needs *after Allen fell*. Doc. 106 at 12–13. Specifically, they contend that "upon Plaintiff falling," Wilkerson "brought Plaintiff to see the nurse" and later "sent him to be assessed by medical." *Id*. at 13.

Allen's claim focuses on Defendants' acts and omissions *before Allen fell*, when Defendants required Allen to load a bag or bags heavier than 20 pounds onto the bus while Allen was encumbered by shackles. *See* Doc. 22. *Post hoc* reasonableness does not immunize *ex ante* recklessness. Thus, Defendants' conduct *after Allen fell*—even if exemplary and commendable—does not shield Defendants from any liability for deliberate indifference to Allen's serious medical need *before he fell*.

Allen has presented sufficient evidence to demonstrate that there are genuine issues of material fact with respect to the elements of his Eighth-Amendment claim. Defendants, therefore, are not entitled to summary judgment on this claim.

## C.  <u>Defendants Are Not Entitled to Qualified Immunity</u>

Defendants next argue that even if their conduct violated Allen's Eighth-Amendment rights, they are entitled to qualified immunity because Allen "has failed to point to any law applicable to the circumstances presented in this case that clearly established the alleged violation of Plaintiff's rights." Doc. 106 at 18.

A government official sued under 42 U.S.C. § 1983 enjoys qualified immunity from suit "unless the official's conduct violated a clearly

established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In determining whether a right is clearly established, the relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1102 (11th Cir. 2014) (internal quotation marks omitted).

Materially similar case law is sufficient to clearly establish a right and can be used to defeat a qualified immunity defense. *See Patel v. Lanier County*, 969 F.3d. 1173, 1886 (11th Cir. 2020). "The prior case law need not be directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (internal quotation marks omitted). A right also can be clearly established by a broader principle that should govern the novel facts of a situation, or when "the conduct at issue so obviously violate[s] the Constitution that prior case law is unnecessary." *Id.* (internal quotation marks omitted).

By 1976—long before Defendants encountered Allen—the Supreme Court clearly held that "prison guards" can be liable for "intentionally interfering with" an inmate's "treatment once prescribed." *Estelle v.*

*Gamble*, 429 U.S. 97, 104–05 (1976). In that case, the inmate-plaintiff alleged among other things that prison officials disregarded an order of medical providers that plaintiff's back injury precluded him from sleeping on an upper bunk. *Id.* at 99.

The facts of *Estelle* are strikingly similar to Allen's case insofar as Allen presented evidence that Defendants recklessly disregarded the medical pass issued by medical providers which—in light of Allen's back degeneration / back injury—precluded him from lifting items in excess of 20 pounds. Doc. 22 at 6. Defendants cannot credibly argue, therefore, that this right was not clearly established.

But *Estelle* was not the only case that clearly established this right. By 1985, the Eleventh Circuit had repeated the Supreme Court's holding: "'Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment . . . .'" *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).

Also in 1985, the Eleventh Circuit reversed a directed verdict for county officials who failed to give a pre-trial detainee "icepacks and

aspirin prescribed by the doctor for pain upon his return to the jail," and the court noted that "[d]eliberate indifference is shown . . . by 'intentionally interfering with the treatment once prescribed.'" *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985) (per curiam) (quoting *Estelle*, 429 U.S. at 105).

Since then, the Eleventh Circuit has repeated this principle multiple times. *See, e.g.*, *See Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) ("An Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment."); *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1169 n.17 (11th Cir. 1995) ("The Eighth Amendment prohibits state caretakers from . . . knowingly interfering with treatment once prescribed."); *Washington v. Dugger*, 860 F.2d 1018, 1020–21 (11th Cir. 1988) (holding that the failure by prison personnel to provide the prescribed treatment for plaintiff's condition could constitute a violation of the Eighth Amendment and precluded summary judgment on medical-deliberate-indifference claim); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) ("If prison guards . . . . intentionally interfere with treatment once prescribed, the eighth amendment is violated.").

By 2021, therefore, it was clearly established that prison guards could not induce an inmate to disregard a medical provider's express written order imposing a medical restriction that precluded the inmate from engaging in activity known to create a risk of injury. Defendants, therefore, are not entitled to qualified immunity.

**D.  Damages**

### 1.  *Allen's Request for Compensatory Damages*

Defendants next argue that Allen is barred from recovering compensatory damages because he cannot prove that he suffered more than a *de minimis* physical injury. Doc. 106 at 19–22 (invoking 42 U.S.C. § 1997e(e)).

Section 1997e(e) states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." But this provision "does not prohibit all requests for damages, only those brought 'for mental or emotional injury . . . without a prior showing of physical injury.'" *Hoever v. Marks*, 993 F.3d 1353, 1358 (11th Cir. 2021) (quoting 42 U.S.C. § 1997e(e)). "That is, the text of § 1997e(e) bars only requests

for compensatory damages stemming from purely mental or emotional harms." *Id.*

Although the statute does not define "physical injury," the Eleventh Circuit requires that a plaintiff allege a physical injury that is more than *de minimis. See Harris v. Garner*, 190 F.3d 1279, 1286–88 (11th Cir. 1999) (holding that the Constitution does not "mandate[ ] a tort damages remedy for every claimed constitutional violation" and that the alleged injury "must be more than *de minimis*, but need not be significant"), *vacated*, 197 F.3d 1059 (11th Cir. 1999), *reinstated in relevant part*, 216 F.3d 970, 972, 985 (11th Cir. 2000). The courts have not reached a consensus regarding the way "to determine when a physical injury is 'greater than *de minimis.*'" *Thompson v. Smith*, 805 F. App'x 893, 904 (11th Cir. 2020).

Here, Allen's verified fifth amended complaint, deposition testimony, and medical records are sufficient to create a genuine issue of material fact as to whether Allen suffered more than a *de minimis* physical injury as a result of Defendants' conduct. This evidence includes:

- Allen's assertion that he suffered back pain while carrying the property, including aggravating or reinjuring a herniated disc. Doc. 106-1, Allen Dep. 28:2–16.

- Allen's assertion that he suffered headaches, dizziness, and pain in his back, knee, and elbow after he tumbled backwards from the second-from-the-top step of the bus to the pavement while carrying his property on his shoulders and while shackled. *Id.*; *see also* Doc. 106-1, Allen Dep. 23:18–23; Doc. 22 at 6–7 ¶¶ 2, 4, 5.

- The reactions of witnesses—including Wilkerson—which essentially acknowledged the severity of Allen's fall. Doc. 106-1, Allen Dep. 13:23–14:2, 19:4–17, 24:18–25:10 and 25:21–26:2.

- Allen's grievances, sick-call requests, and medical records—which document Allen's complaints of back pain, knee pain, and headaches that Allen claimed started on November 16, 2021—not to mention prescriptions for pain medication for these injuries. Doc. 105-2 at 210–19; Doc. 106-2 at 121–22 (MR114–15), 165–66 (MR 158–59), 174–76 and 187 (MR167–69 and 180), 216–18 (MR209– 11), 254–56 (MR247–49), 290 (MR283), 334 and 344–47 (MR327 and 337–40), 355–56 (MR348–49), 396  (MR389), 411–17, 420, 424 (MR404–10, 413, 417), 428 (MR421), 429–35 (MR422–28).

- Allen's medical records, which indicate that he suffered a left-eye retinal detachment on October 4, 2023, which Allen attributes to vision problems dating back to his November 16, 2021 fall. Doc. 105-2 at 287; Doc. 106-2 at 460–75 (MR453–68).

Thus, Defendants have failed to demonstrate the lack of a genuine issue of material fact regarding Allen's alleged physical injuries.

### 2.    *Allen's Request for Punitive Damages*

Defendants also argue that Allen's request for punitive damages is statutorily barred under 18 U.S.C. § 3626(a)(1)(A). Doc. 106 at 23.

The Eleventh Circuit has not held that § 3626 categorically bars recovery of punitive damages. *See Hoever*, 993 F.3d at 1364 n.5

(permitting punitive damages under 42 U.S.C. § 1997e(e) and declining "the government's invitation to address the availability of punitive damages in prison condition cases under 18 U.S.C. § 3626"); *Johnson v. Breeden*, 280 F.3d 1308, 1325 (11th Cir. 2002) (clarifying the framework for awarding punitive damages under 18 U.S.C. § 3626 in prisoner civil rights action), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015).

Several district courts have rejected the contention that § 3626 categorially bars punitive damages. *See, e.g.*, *Harris v. Singletary*, No. 3:22-cv-449-MMH-LLL, 2024 WL 3252797, at *14 (M.D. Fla. July 1, 2024); *Blake v. Ortega*, No. 3:23-cv-8554-LC-HTC, 2024 WL 2000107, at *4 (N.D. Fla. Mar. 18, 2024), *adopted by* 2024 WL 1996014 (N.D. Fla. May 6, 2024).

Defendants, therefore, have not demonstrated that they are entitled to judgment as a matter of law regarding Allen's request for punitive damages.

## E.   <u>Allen is Not Entitled to Summary Judgment</u>

Allen has moved for summary judgment on his claim of deliberate indifference to a serious medical need. Doc. 105.

A plaintiff who seeks summary judgment on a claim for which he bears the burden of proof must demonstrate that—while drawing all reasonable inferences in favor of the defendants—there is no genuine issue of material fact as to "all the essential elements" of his claim and the plaintiff is entitled to judgment as a matter of law. *United States v. Four Parcels of Real Property in Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1438 (11th Cir. 1991). Put another way, to prevail on his motion for summary judgment, Allen "had to present evidence so decisive that 'no reasonable jury could find' for" Defendants. *Engineered Tax Servs., Inc. v. Scarpello Consulting, Inc.*, 958 F.3d 1323, 1328–29 (11th Cir. 2020) (quoting *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)).

Allen has failed to carry this heavy burden. Although—as demonstrated above—Allen's evidence is sufficient to create genuine issues of material fact, Allen's evidence is not so overwhelming that it would compel any reasonable jury to find for Allen on all essential elements. For example, as to the "deliberate indifference" element, a jury rationally could draw inferences in Defendants' favor and conclude that the Defendants were not deliberately indifferent.

**F.    Allen's Attempt to Assert New Claims**

In his motion for summary judgment and his response to Defendants' motion for summary judgment, Allen attempts to assert multiple new claims. *See* Doc. 105 at 7–11; 112 at 6, 12. A plaintiff generally may not assert new claims in a motion for summary judgment or a response to a motion for summary judgment. *See White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1200 (11th Cir. 2015); *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004). Indeed, Allen had five opportunities to amend his complaint. He is not entitled to another such opportunity at this late stage.

## IV.  CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1.    **DENY** Defendants' Motion for Summary Judgment. Doc. 106.

2.    **DENY** Plaintiff's Motion for Summary Judgment. Doc. 105.

At Pensacola, Florida, this <u>12th</u> day of May, 2025.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters.** *See* **28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only.</u> A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**